IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| In Re: | : Bankr. No. 05-36514-NVA |
| MARSHALL RIEF | : (Chapter 7) |
| | : |
| *   *   *   *   *   *   * | : |
| | : |
| ZVI GUTTMAN | : |
| | : |
| v. | : Bankr. Adversary No. 06-1579 |
| | : Civil Action No. WMN-06-2823 |
| MARSHALL RIEF et. al | : |

**MEMORANDUM**

Before the Court is the motion of Joanne Block Rief and Amie Sue Nochumowitz,(collectively, Defendants), to dismiss several counts of the complaint filed by Zvi Guttman (Trustee), the Chapter 7 Trustee for Debtor Defendant Marshall Rief (Debtor). Paper No. 15.[1] Debtor has joined the motion of Defendants. Paper No. 17. The motion to Dismiss is now ripe for decision. Upon a review of the motion and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion will be granted in part and denied in part.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

On October 12, 2005, Debtor filed a voluntary petition for a Chapter 7 bankruptcy in the United States Bankruptcy Court for the District of Maryland.[2] On July 31, 2006, Trustee filed a

---

[1] Also before the Court is Defendants' Motion to Strike Jury Demand. Paper No. 10. Because the Court has found that Trustee's claims give rise to a jury trial under the Seventh Amendment, that motion will be denied. See Mem. & Order dated Oct. 25, 2006, Papers No. 5, 6.

[2] The Complaint in the instant case raises claims which are nearly identical, both factually and legally, to the related case of Liebmann v. Nochumwitz, Civil Action No. WMN-06-2583.

Complaint and Demand for a Jury Trial in that Court alleging that Debtor, a former landlord in Baltimore City, engaged in a series of fraudulent business transactions designed to conceal his assets to avoid actual and potential liability resulting from lead paint claims which former tenants had filed against him.[3] As part of his concealment scheme, Trustee claims that Debtor purported to divest himself of his interests in properties, business ventures, and assets.  Debtor then created new business entities in which he purported to have no interest.[4]  Trustee alleges that, though Debtor purported to establish these new businesses under the names of the Defendants, in reality, Debtor remains the owner of the businesses and continues to operate, manage, and make decisions regarding the businesses.  Throughout the three years preceding the filing of the bankruptcy petition, Trustee alleges that Debtor has continued to fraudulently transfer substantial income generated by these businesses to the Defendants.  Additionally, Trustee claims that, during the 1990s, Debtor liquidated his substantial real estate holdings and, in an

---

[3]  The Complaint alleges six counts: Declaratory Judgment Pursuant to 28 U.S.C. §§ 2201, 2202 (Count I); Objection to Debtor's Discharge Pursuant to 11 U.S.C. §§ 727(a)(2-5) (Count II); Monetary Judgment for and Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 548, 550 (Count III); Monetary Judgment for and Avoidance of Fraudulent Transfers Pursuant to 11 U.S.C. §§ 544, 550 and the Maryland Uniform Fraudulent Conveyances Act (Counts IV, V); and Monetary Judgment for Aiding and Abetting Fraudulent Conveyances (Count VI).

[4]  These businesses include Big Boyz Bail Bonds, Inc., Control Properties, LLC, Gunner Bay, LLC, and Big Girlz, LLC. Compl. 7-10.

attempt to avoid the claims of his creditors, transferred the proceeds to his wife (Defendant Joanne Block Rief) and others.

On October 25, 2006, this Court granted Trustee's motion to withdraw the adversary proceeding from the Bankruptcy Court. Paper No. 5. In the instant motion, Defendants seek to dismiss Counts I, III, IV, V, and VI, asserting that each claim is barred by the applicable statute of limitations.

## II. LEGAL STANDARDS

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff. See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997). "To survive [a] motion to dismiss, Plaintiffs must have alleged facts that show that they are entitled to relief on their substantive causes of action." In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).

## III. DISCUSSION

### A. Declaratory Judgment

Trustee first asks the Court to enter a declaratory judgment affirming that Debtor maintains an interest in the concealed

assets listed in the Complaint and affirming that those assets are subject to the claims of his creditors.  In the alternative, Trustee asks the Court to declare that Debtor is not entitled to a discharge in bankruptcy.  The Declaratory Judgments Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The exercise of jurisdiction under the Act is discretionary. Brillhart v. Excess Ins. Co., 316 U.S. 491, 494 (1942).  In its discretion, the Court must be satisfied that declaratory relief is appropriate.  North East Insurance Company v. Northern Brokerage Company, 780 F.Supp. 318, 320 (D. Md. 1991) (holding that, to ascertain appropriateness, the Court should ask: "(1) whether the judgment will serve a useful purpose in clarifying the legal relations in issue; or (2) whether the judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." (citing White v. National Union Fire Insurance Co., 913 F.2d 165, 167-68 (4th Cir. 1990)).

In their motion to dismiss, Defendants argue that, because the applicable statutes of limitation bar the substantive counts in the complaint, Trustee's claim for declaratory judgment is also barred by limitations.[5]  As a general rule, an action for

---

[5] In their reply, Defendants also contend that Trustee lacks standing under sections 541, 704 and 544 of the bankruptcy

4

declaratory judgment will be barred to the same extent the applicable statute of limitations bars an underlying action in law or equity.  See Algrant v. Evergreen Valley Nurseries Ltd., 126 F.3d 178, 181 (3d Cir. 1997) (finding that "an action for declaratory relief will be barred to the same extent that the applicable statute of limitations bars the concurrent legal remedy").  As discussed below, because the Court finds that Trustee's substantive claims are not barred under the applicable statutes of limitation, his claim for declaratory judgment will stand.

B.  Fraudulent Transfers Under Sections 544 and 548 of Title 11

In Counts III and IV, Trustee asserts a claim against Defendant Joanne Block Rief (Dr. Rief), the Debtor's wife, for monetary judgement for and avoidance of fraudulent transfers pursuant to sections 544, 548 and 550 of title 11.  Section 544(b) of title 11 "gives the trustee the right to avoid any transfer of the debtor or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under the Bankruptcy Code[.]"

---

code to assert a claim against third parties to recover assets which it claims are part of the estate under an alter ego theory designed to pierce the corporate veil.  Here, Trustee does not advance an alter ego theory. Additionally, it is uncontested that under section 548 of title 11, which is asserted by the Trustee, standing exists "not only to sue to obtain a declaration that certain property is property of the estate, but also to obtain possession of that property."  In re Moss, 267 B.R. 834, 837 (8th Cir. 2001).

5

5 Collier on Bankruptcy, ¶ 544.09.[6]  Here, the applicable state law is the Maryland Uniform Fraudulent Conveyances Act (MUFCA). Md. Code Ann., Com. Law § 15-201, et seq.  The MUFCA provides, in pertinent part, that "[e]very conveyance made and every obligation incurred by a person who is or will be rendered insolvent by it is fraudulent as to creditors without regard to his actual intent, if the conveyance is made or the obligation is incurred without a fair consideration." Id. at § 15-204. Additionally, "[e]very conveyance made and every obligation incurred without fair consideration when the person who makes the conveyance or who enters into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to both present and future creditors. Id. at § 15-206.[7]  Actions under the MUFCA are subject to a three year statute of limitations. Dixon v. Bennett, 531 A.2d 1318, 1320 n.2 (Md. Ct. Spec. App. 1987) (citing Maryland's general statute of limitations for civil actions, Md. Code Ann., Cts. & Jud. Proc. § 5-101).

Unlike section 544(b), which incorporates state law to avoid fraudulent transfers, section 548 of title 11 is the federal

---

[6] Following avoidance, section 550 of title 11 permits the trustee "to recover the property transferred for the value of the property transferred."  5 Collier on Bankruptcy, ¶ 550.01[1].

[7] For purposes of the MUFCA, a "conveyance" is defined to include "every payment of money, assignment, release, transfer, lease, mortgage, or pledge of tangible or intangible property, and also the creation of any lien or incumbrance." Id. at 15-201(c).

6

fraudulent transfer avoidance provision.[8]  5 <u>Collier on Bankruptcy</u>, ¶ 548.01.  Generally, section 548 allows the trustee to avoid any transfer of an interest in property that depletes the debtor's assets to the detriment of the estate that was made within one year before the commencement of the bankruptcy case.[9]

---

[8]  The language of section 548 applicable to this action provides:

> (a) (1) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily--
>
> (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted; or
>
> (B)(i) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (ii)(I) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation;
>
> (II) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with the debtor was an unreasonably small capital; or
>
> (III) intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured.

11 U.S.C.A. § 548(a)(1) (2004).

[9]  The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 amended section 548 to provide a general reachback period of two years.  Pub. L. No. 109-8, § 1406(b)(2) (2005). This change was made effective only with respect to those cases commenced on or after April 21, 2006.  <u>Id.</u>

7

Id.  A "transfer" includes "each mode . . . of disposing of or parting with-- (i) property; or (ii) an interest in property." 11 U.S.C. § 101(54)(A).  An "interest in property" extends beyond "a formal transfer of title or property ownership[,]" and includes "[t]ransfer of possession, custody or control[.]"  5 Collier on Bankruptcy, ¶ 548.02[1][b].

Defendants argue that Debtor divested himself of ownership of the assets transferred to his wife and others by properly transferring title of those assets to others more than three years prior to the filing of the bankruptcy proceeding.  Thus, Defendants contend that the Maryland statute of limitations bars Trustee's section 544 claims, and the one-year limitations period provided in section 548 bars Trustee's claim under that section.  Further, Defendants argue that Debtor did not have control over the income generated from the assets and businesses in question in the three years preceding the bankruptcy filing, and, therefore, no legal basis exists to avoid transfers of that income.  Relying on the validity of their ownership interests in the assets in question, Defendants read the Complaint as an attempt by Trustee to sidestep the statute of limitations under the theory that one of Debtor's alleged creditors may have been a minor when that creditor's cause of action arose.[10]

---

[10] Under Maryland's infancy statute, "[w]hen a cause of action subject to a limitation under Subtitle 1 of this title or Title 3, Subtitle 9 of this article accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."  Md. Code Ann., Cts. &

8

Defendants' argument for the dismissal of Trustee's avoidance claims is based on the factual supposition that Debtor actually and properly divested himself of title of the assets in question beyond the limitation period.  Trustee, however, refutes these facts arguing instead that Debtor presently owns the businesses and assets listed in the complaint.  <u>See</u>, <u>e.g.</u>, Compl. 6 ("Debtor purported to 'divest' himself of his interests in his properties and businesses, or to set up new businesses in which, <u>strictly on paper</u>, he purported not to have an interest.") (emphasis in original).[11]  Based on the factual allegation that Debtor is the current owner of the assets and businesses in question, Trustee argues that Debtor transferred substantial amounts of income generated by those assets to Dr. Rief continuously throughout the three year period preceding the filing of the bankruptcy petition.  <u>Id.</u> at 11 ("Since the creation of the Concealed Assets and through the filing of this complaint, Debtor has directed - and continues to direct - that

---

Jud. Proc. § 5-201.

[11] Trustee bases his argument that Debtor continues to own the assets in question partly under the doctrine of continuous concealment.  Under that doctrine, discharge of a bankruptcy may be denied despite the transfer of an asset occurring outside the statutory period where debtor has concealed the retention of a beneficial interest in the asset.  6 <u>Collier on Bankruptcy</u>, ¶ 727.02[2][b].  Several courts have recognized the doctrine of continuous concealment in the context of section 727(a)(2) of title 11.  <u>See</u>, <u>e.g.</u>, <u>In re Rosen</u>, 996 F.2d 1527, 1532 (3d Cir. 1993); <u>In re Olivier</u>, 819 F.2d 550, 553 (5th Cir. 1987); <u>In re Keeney</u>, 227 F.3d 679, 682-83 (6th Cir. 2000); <u>In re Kauffman</u>, 675 F.2d 127, 128 (7th Cir. 1981).  The Court offers no opinion here as to whether the doctrine applies to actions under sections 544 and 548 of title 11.

9

substantial revenues and income generated by the Concealed Assets be conveyed to others, principally his wife, Dr. Rief."). Trustee claims that these transfers of income are subject to avoidance under both section 544 and 548 of title 11.

In stating his claims under sections 544 and 548, Trustee specifically alleges that Debtor made the transfers with the intent to hinder, delay or defraud his creditors. Id. 12-13; See Dixon, 531 A.2d at 1320 n.2 (noting that "[t]o maintain a suit pursuant to MUFCA, the plaintiff needs to allege that a creditor-debtor relationship exists and that the debtor has fraudulently transferred assets."); In re Exide Techs., Inc., 299 B.R. 732, 749 (D. Del. 2003) (noting that a claim under section 548(a)(1)(A) must allege that the transfers in question were made with actual intent to hinder, delay or defraud his creditors). Trustee further alleges that Debtor transferred the income in question at a time in which he was insolvent or would be rendered insolvent by the transfers, and that he made them without receiving fair consideration. Compl. 12-13; see In re Exide Techs., Inc., 299 B.R. at 746-47 (noting that a claim under section 548(a)(1)(B) must allege that "(1) the alleged transfer was made or incurred within one year before the date of the filing of the petition, (2) the debtor did not receive reasonably equivalent value for the property transferred, and (3) one of the following: (a) the debtor was insolvent on the date such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation; . . . .").

Because the Court must accept Trustee's factual allegation that Debtor is the current owner of the assets in question, the Court finds that Maryland's statute of limitations would not bar an action based upon transfers of income generated from those assets which occurred during the three years preceding the bankruptcy filing.  Likewise, the one year limitations period provided in section 548 of title 11 would not bar transfers of income made within the year preceding the filing.  Thus, taking the facts regarding the ownership of the assets in question in the light most favorable to Trustee, Counts III and IV will survive.

C. Transfers During Creditor's Period of Disability

Like his claim in Count IV, in Count V, Trustee asserts a claim against Dr. Rief for monetary judgment for and avoidance of fraudulent transfers pursuant to sections 544(b) and 550 of title 11.  Count V differs, however, in that Trustee attempts to reach transfers made by Debtor beyond the three year statute of limitations period.  Thus, rather than attempting to avoid only the transfers of income generated by Debtor's concealed assets, in Count V, Trustee attempts to avoid the purported transfer of the assets themselves, including the proceeds from Debtor's sale of real property which he owned in the 1990s.

In making his claim under Count V, Trustee relies on the Maryland infancy exception to the general statute of limitations, which provides that "[w]hen a cause of action subject to a

11

limitation under Subtitle 1 of this title or Title 3, Subtitle 9 of this article accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed."  Md. Code Ann., Cts. & Jud. Proc. § 5-201(a).  Trustee argues that he stands in the shoes of all lead paint claimants who were minor children when Debtor purported to transfer the assets in question.  Thus, he contends that he may assert any claims arising from such transfers which would not have accrued against minor creditors until the expiration of the three year limitation period after the date on which such creditors reached the age of majority.

The infancy exception to Maryland's three year statute of limitations provided in section 5-201 of the Maryland Courts and Judicial Proceedings Article applies to those causes of action "subject to a limitation under Subtitle 1 of this title[.]"  See Md. Code Ann., Cts. & Jud. Proc. § 5-201(a).  Because claims under the MUFCA asserted by a bankruptcy trustee under section 544(b) of title 11 are subject to the limitations period provided in subtitle 1 of the Courts and Judicial Proceedings Article, the infancy exception applies to fraudulent conveyance claims brought under the MUFCA.  See Dixon, 531 A.2d at 1320 n.2.  A bankruptcy trustee acting under section 544(b) stands in the shoes of all creditors, and, therefore, may invoke the infancy exception in defense to a limitations claim.  See In re Porras, 312 B.R. 81, 97 (Bankr. W.D. Tex. 2004) ("[T]he Trustee under [section] 544(b)

may use statutes of limitations available to any creditor in whose shoes he stands in bringing the action.").

Defendants argue that, for the Maryland infancy exception to stay the limitations period, an infant creditor's cause of action must have arisen at the time the allegedly fraudulent transfers were made. They contend that Trustee failed to allege any of Debtor's creditors (including infants) were creditors at the times when the transfers in question occurred. Thus, Trustee failed to state that a cause of action had arisen which was capable of implicating the Maryland infancy statute. See Dixon, 531 A.2d at 1320 n.2 (noting that "[t]o maintain a suit pursuant to the MUFCA, the plaintiff needs to allege that a creditor debtor relationship exists and that the debtor has fraudulently transferred assets").

Contrary to Defendants' contention, the Complaint specifically alleges that causes of action had arisen on behalf of Debtor's minor creditors at the time that Debtor purported to transfer the income from the sale of his real property. The Complaint states that "[i]n anticipation of, and in response to hundreds of lead paint claims against him . . . Debtor engaged in a complicated, but fraudulent pre- and post-petition scheme to conceal his assets from his creditors . . . ." Compl. 2. Further, the Complaint alleges that "Debtor's creditors include one or more persons who are minors now or were at the time of the acts complained of . . ." and that the creditors were "principally low-income children poisoned by lead paint [who]

13

hold judgments and claims against [Debtor] they cannot collect." Id. at 3.  Thus, the Court finds that Trustee has asserted facts which could support the application of Maryland's infancy statute.

Defendants also contend that Maryland's Family Law Article precludes the application of the infancy statute.  The relevant portion of that Article provides that "[a] transfer of property between spouses is invalid if made in prejudice of the rights of present creditors" and that "[a] claim under this paragraph shall be asserted within 3 years after the transfer or be barred absolutely."  Md. Code Ann., Fam. Law § 4-301(d).  Accordingly, Defendants claim that any and all claims challenging transfers which occurred more than three years prior to the filing of the bankruptcy petition between Debtor and his wife are absolutely barred as a matter of law.

An exception to the absolute bar of section 4-301 of the Family Law Article exists where some act or omission on the part of one spouse kept the plaintiff in ignorance of the alleged fraudulent transfer, and the act or omission was of such a character as to conceal itself.  Citizens Nat. Bank of Havre De Grace v. Leffler, 179 A.2d 686, 689 (Md. 1962).  Thus, to avoid the three year absolute bar under section 4-301 of the Maryland Family Law Article, Trustee must allege that either Debtor or Dr. Rief engaged in acts designed to conceal the transfers in question and that those acts were not generally discoverable.

14

The Complaint specifically alleges that Debtor engaged in "a pattern of lies and deception designed to defraud his creditors." Compl. 16-17.  The Complaint notes that Debtor's acts and omissions "kept Debtor's creditors from discovering Debtor's conduct."  <u>Id.</u> at 17.  Trustee claims that the conveyances in question were of the character to conceal themselves because the assets were privately held and because Debtor kept information from the Court.  Trustee further alleges that, because of this deceptive conduct, "creditors have been delayed and hindered in their ability to pursue their claims."  <u>Id.</u>  Taking these facts in Trustee's favor, as it must, the Court finds that Trustee has adequately pled a cause of action against Dr. Rief under Count V.

### D. Aiding and Abetting

In Count VI, Trustee asserts a claim for monetary judgment for aiding and abetting fraudulent conveyances.  Defendants argue that no such cause of action exists under Maryland law because aiding and abetting claims in Maryland must be predicated upon a non-statutory tort.  Defendants also argue that, if civil aiding and abetting exists under Maryland law, Trustee would lack standing because "[t]he Bankruptcy Code 'does not confer authority upon the Trustee to pursue state law damage claims' on behalf of the Debtor's unsecured creditors."  Reply Br. 15 (quoting <u>In re Canyon Sys. Corp.</u>, 343 B.R. 615, 657 (Bankr. S.D. Ohio 2006)).  In <u>Canyon Systems</u>, the Court found that section 544(b)(1) of title 11 does not provide a bankruptcy trustee with the power to pursue state law damage claims because that section

15

specifically provides only the power of avoidance.  343 B.R. at 657.  The Canyon Systems Court noted, however, that a trustee may assert state law damage claims belonging to the debtor when acting as the representative of the bankruptcy estate under sections 323[12] and 541(a)[13] of title 11 or when acting in his creditor capacity under section 544(a).

Here, if it exists under Maryland law, the cause of action for aiding and abetting fraudulent transfers would belong to the creditors of Debtor's estate, not to Debtor himself.  Thus, Trustee has no standing under sections 323 and 541(a).  See In re Porter McLeod, 231 B.R. 786, 792 (D. Colo. 1999) (noting that "[w]hen a trustee brings an action pursuant to [section] 541(a) as successor to the debtor's interests in property, his standing stems from his debtor's status qua debtor.").  Further, under section 544(a), a trustee has standing to pursue claims obtained derivatively from creditors.  In re Porter McLeod, Inc., 231 B.R. 786, 793 (D. Colo. 1999) (finding that "the trustee is acting in his capacity as a creditor under [section] 544(a) to bring a 'creditors bill' to reach choses in action that belong to the debtor.") (emphasis in original).  The trustee has no standing,

---

[12]  Section 323 of title 11 provides:
   (a) The trustee in a case under this title is the representative of the estate.
   (b) The trustee in a case under this title has capacity to sue and be sued.

[13]  Generally, section 541(a) of title 11 "creates the bankruptcy estate, which consists of all the property that will be subject to the jurisdiction of the bankruptcy court."  5 Collier on Bankruptcy ¶ 541.01.

however, to bring personal claims "on behalf of the estate's creditors against third parties." In re Ozark Restaurant Equipment Co., Inc., 816 F.2d 1222, 1227 (8th Cir. 1987).

The cause of action for aiding and abetting asserted by Trustee is predicated upon his claims for fraudulent transfer arising under section 544(b). Trustee has failed to assert that standing exists, independent of that section, to pursue a state law damages claim against third party defendants. See In re Myers, 320 B.R. 677, 669 (Bankr. N.D. Ind. 2005) ("[Section 544(b)] does not give the trustee the power to pursue any action that might be brought by debtor's creditors . . . . If the trustee seeks to do something other than avoid a particular transaction, the power to do so must come from somewhere other than [section] 544(b)."). Thus, Count VI will be dismissed.

## IV. CONCLUSION

For the above stated reasons, Defendants' Motion to Dismiss will be granted in part and denied in part. Count VI will be dismissed. A separate order consistent with the reasoning of this Memorandum will follow.

                                                                /s/
                                        William M. Nickerson
                                        Senior United States District Judge

Dated: January 24, 2007